IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DARRELL BURGESS, #308 674, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-CV-652-WC |
| | ) | [WO] |
| DR. WILCOTTE RAHMING, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I. INTRODUCTION

Plaintiff Darrell Burgess ["Burgess"] filed this 42 U.S.C. § 1983 action for damages and injunctive relief on September 28, 2017, during his incarceration at the Kilby Correctional Facility ["Kilby] in Mt. Meigs, Alabama.[1]  The complaint involves a dispute over the adequacy of medical care and treatment afforded Burgess while at Kilby. Burgess names as the defendant Dr. Wilcotte Rahming, the Medical Director at Kilby during the time relevant to the allegations.

Dr. Rahming filed an answer, special report, supplemental special report, and supporting evidentiary material addressing Burgess's claims for relief. Docs. 12, 15, 19. In these documents, Dr. Rahming denies he acted in violation of Burgess's constitutional rights. Dr. Rahming also asserts the complaint is due to be dismissed because Burgess failed to exhaust an administrative remedy available to him through the prison system's medical provider regarding his claims prior to filing the complaint. Doc. 12; Doc. 19-1.  Dr. Rahming bases his exhaustion defense on Burgess's failure to comply with the institutional medical provider's grievance procedure

---

[1]  Burgess filed suit while incarcerated at the Kilby Correctional Facility in Mt. Meigs, Alabama. During the pendency of this action he was transferred to another correctional facility in Alabama. *See* Doc. 24.

regarding the claims presented.   Doc. 19-1. In addition, Dr. Rahming maintains, and the evidentiary material, including Burgess's medical records, reflect that Burgess received appropriate medical treatment at all times relevant to the matters alleged in the complaint. Docs. 15-3, 15-5.

On February 6, 2018, the court entered an order granting Burgess an opportunity to file a response to Dr. Rahming's answer and special report in which he was advised to specifically address Defendant's argument that his "claims are due to be dismissed because he failed to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA")." Doc. 22 at 1 (footnote omitted).   The order advised Burgess his response should be supported by affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 22 at 3.   This order further cautioned Burgess that, unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, the court may at any time [after expiration of the time for his filing a response to this order] and without further notice to the parties (1) treat the special report, as supplemented, and any supporting evidentiary materials as . . . a motion to dismiss . . . and (2) after considering any response as allowed by this order, rule on the motion in accordance with law."   Doc. 22 at 3. Burgess filed a response to Dr. Rahming's special report on February 6, 2018 (Doc. 20). Burgess filed no further response.

In his response to Dr. Rahming's exhaustion defense, Burgess  maintains he exhausted the grievance process. Doc. 20 at 1–2. To support his special report, Dr. Rahming produced relevant documents in Burgess's inmate medical file and an affidavit from Laquisha Moore, the Health Services Administrator ["HSA"] at Kilby, which refute Burgess's claim he exhausted the institutional medical provider's grievance procedure. These documents and affidavit reflect that

Burgess has access to the institutional medical provider's administrative remedy procedure and utilized the procedure to file a medical grievance regarding the subject matter of the complaint but submitted no grievance appeal after receiving a response to the initial grievance.[2] Doc. 19-1 at 7–8; Doc. 20-4. While Burgess maintains he exhausted his claims against Dr. Rahming, the documents and records before the court demonstrate that during all times relevant to the allegations made, Burgess had access to the institutional medical provider's grievance process but failed to comply properly with the administrative grievance remedy prior to filing this action. *See Bock*, 549 U.S. at 218 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison [medical provider's] requirements, and not the PLRA, that define the boundaries of proper exhaustion.").

"[A]n exhaustion defense . . . is not ordinarily the proper subject for a summary judgment [motion]; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374-1375 (11th Cir. 2008) (internal quotations omitted); *Trias v. Florida Dept. of Corrections*, 587 F. App'x 531, 534 (11th Cir. 2014) (District court properly construed defendant's "motion for summary judgment as a motion to dismiss for failure to exhaust administrative remedies[.]"). Pursuant to the court's order of February 6, 2018 (Doc. 22), the court will treat Defendant's special report, as supplemented (Docs. 15, 19), as a motion to dismiss.

---

[2] Burgess submitted evidence of a grievance he submitted on September 11, 2017, complaining that Dr. Rahming changed his medication without advising Burgess what the new medication would be or its side effects. Doc. 20-3. A response to the grievance was provided to Burgess on September 15, 2017. Doc. 20-3. There is no evidence Burgess filed an appeal of the grievance response. Nonetheless, during the pendency of this action and on Burgess's motion, the court dismissed his challenge regarding Dr. Rahming's failure to notify him of changes to his medication. Docs. 26, 28.

## II.  STANDARD OF REVIEW

In addressing the requirements of 42 U.S.C. § 1997e exhaustion, the Eleventh Circuit has

recognized that [t]he plain language of th[is] statute makes exhaustion a precondition to filing an action in federal court. This means that until such administrative remedies as are available are exhausted, a prisoner is precluded from filing suit in federal court.

*Leal v. Ga. Dept. of Corrs.*, 254 F.3d 1276, 1279 (11th Cir. 2001) (citations and internal quotations

omitted). Furthermore, "the question of exhaustion under the PLRA [is] a 'threshold matter' that

[federal courts must] address before considering the merits of the case" and that cannot be waived.

*Myles v. Miami-Dade Cnty. Corr. & Rehab. Dept.*, 476 F. App'x 364, 366 (11th Cir. 2012)

(quoting *Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004)).

"When deciding whether a prisoner has [properly] exhausted his remedies, the court should

first consider the plaintiff's and the defendants' versions of the facts, and if they conflict, take the

plaintiff's version of the facts as true.  'If in that light, the defendant is entitled to have the

complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.'  *Turner*

*v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008) (*citing Bryant*, 530 F.3d at 1373-74). If the

complaint is not subject to dismissal at this step, then the court should make 'specific findings in

order to resolve the disputed factual issues related to exhaustion.'  *Id.* (*citing Bryant*, 530 F.3d at

1373-74, 1376)."  *Myles*, 476 F. App'x at 366.  Consequently, a district court "may resolve

disputed factual issues where necessary to the disposition of a motion to dismiss for failure to

exhaust [without a hearing].  The judge properly may consider facts outside of the pleadings to

resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties

have a sufficient opportunity to develop the record." *Trias*, 587 F. App'x at 535. Based on the

foregoing, the Eleventh Circuit has rejected an inmate-plaintiff's argument that "disputed facts as

to exhaustion should be decided" only after a trial either before a jury or judge. *Id.* at 534.

4

Upon review of the complaint, Defendant's special report, as supplemented, and the evidentiary materials filed in support thereof, the court concludes that Defendant Rahming's motion to dismiss is due to be granted.

### III. DISCUSSION

Burgess, who has Myasthenia Gravis,[3] challenges the adequacy of medical care Dr. Rahming provided to him at Kilby in June of 2017. Burgess alleges the defendant physician discounted the need for tests suggested by an off-site neurologist and told Burgess his claim that his symptoms were worsening were "all in [his] mind."[4] Doc. 1 at 3. Dr. Rahming denies these allegations and states that at all time relevant to the issues in the complaint Burgess received careful monitoring of his condition by his outside neurologist and the medical staff at Kilby, his medical needs were not delayed or denied, and he received appropriate care, medical attention, and medication for his condition. Docs. 15-3, 15-5. Dr. Rahming also asserts this case against him is subject to dismissal because Burgess failed to exhaust the administrative remedy provided to him by the institutional medical care provider prior to filing suit as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). Docs. 12, 19-1.

The PLRA compels exhaustion of available administrative remedies before a prisoner can seek relief in federal court on a § 1983 complaint. Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "Congress

---

[3] Myasthenia Gravis is a chronic autoimmune neuromuscular disease that causes weakness in the skeletal muscles responsible for breathing and moving parts of the body, including arms and legs. Doc. 15-5 at 11.
[4] As noted, on Burgess's motion, the court dismissed Ground Two of the complaint in which Burgess alleged Dr. Rahming continued to "toy" with Burgess's medication including changing Burgess's blood pressure medication without his knowledge. *See* Docs. 26, 28.

has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative remedies." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

> The PLRA strengthened [the exhaustion] provision [applicable to inmate complaints] in several ways. Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all "available' remedies, not just those that meet federal standards. Indeed, as [the Supreme Court] held in Booth, a prisoner must now exhaust administrative remedies even where the relief sought¬—monetary damages—cannot be granted by the administrative remedies.

*Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (internal citation omitted).

Exhaustion of all available administrative remedies is a precondition to litigation and a federal court cannot waive the exhaustion requirement. *Booth*, 532 U.S. at 741; *Alexander v. Hawk*, 159 F.3d 1321, 1325 (11th Cir. 1998). "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1857 (2016). However, "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. Generally, a remedy is "available" when it has "sufficient power or force to achieve an end, [or is] capable of use for the accomplishment of a purpose." *Booth*, 532 U.S. at 737 (quotation marks omitted). Moreover, "the PLRA exhaustion requirement requires proper exhaustion." *Woodford*, 548 U.S. at 93.

> Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules [as a precondition to filing suit in federal court] because no adjudicative system can function effectively without imposing some orderly structure on the courts of its proceedings. . . . Construing § 1997e(a) to require proper exhaustion . . . fits with the general scheme of the PLRA, whereas [a contrary] interpretation [allowing an inmate to bring suit in federal court once administrative remedies are no longer available] would turn that provision into a largely useless appendage.

*Id.* at 90–93. The Supreme Court reasoned that because proper exhaustion of administrative remedies is necessary an inmate cannot satisfy the PLRA's "exhaustion requirement . . . by filing an untimely or otherwise procedurally defective administrative grievance or appeal[,]" or by effectively bypassing the administrative process simply by waiting until the grievance procedure is no longer available to him." *Id.* at 83–84; *Bryant*, 530 F.3d at 1378 (holding that prisoners must "properly take each step within the administrative process" to exhaust administrative remedies in accordance with the PLRA); *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005) (holding that an inmate who files an untimely grievance or simply spurns the administrative process until it is no longer available fails to satisfy the exhaustion requirement of the PLRA); *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000) (holding that inmate's belief that administrative procedures are futile or needless does not excuse the exhaustion requirement). "The only facts pertinent to determining whether a prisoner has satisfied the PLRA's exhaustion requirement are those that existed when he filed his original complaint." *Smith v. Terry*, 491 F. App'x 81, 83 (11th Cir. 2012).

It is undisputed that the health care provider for the Alabama Department of Corrections provides a grievance procedure for inmate complaints related to the provision of medical treatment they receive in prison. The evidentiary material filed reflects Burgess had access to the grievance procedure during his incarceration at Kilby and that no correctional or medical staff at the facility interfered with his ability to file a grievance. Doc. 19-1; *see also* Doc. 20-3; Doc. 20-4. Regarding the institutional medical provider's grievance procedure, Dr. Rahming's evidence reflects that a grievance procedure is available for inmates to present problems, issues, or complaints they have regarding medical treatment provided at the institutional healthcare unit. Health care grievance

7

forms are available to inmates at the health care unit or through any correctional officer. The HSA at Kilby is the custodian of all grievances filed by inmates, and the grievances are handled by the HSA or her designee. The medical complaint box is checked daily—Monday through Friday—for inmate request slips and medical grievance forms. The HSA or her designee must answer an inmate grievance within ten working day of receipt of the grievance. After a response to the grievance is completed, the grievance form is annotated in the grievance log by an administrative assistant. The original written response to a grievance is kept on file with the grievance log and a copy of the written response to the grievance is provided to the inmate. An inmate may appeal a grievance response which must be answered, in writing, by the HSA within seven working days and must be appropriately annotated in the grievance log.  Inmates are provided with a copy of the  completed grievance appeal containing the health service administrator's response. If an inmate is unsatisfied with the HSA's response to the grievance appeal, an in-person meeting must take place with the HSA and any other members of the health care team that may be indicated. If the matter remains unresolved, a meeting is arranged with the aforementioned individuals and the Warden or the Warden's designee. Doc. 19-1 at 2–13.

The record establishes that Burgess had an administrative remedy available to him at Kilby during his confinement at the facility via the institutional medical provider's grievance procedure. Defendant Rahming's undisputed evidence reflects Burgess submitted a grievance on September 1, 2017,[5] in which he complained about the ADOC's failure to approve medical tests suggested by an offsite medical provider and Dr. Rahming's assertion that Burgess did not need the tests. The nurse designee filed a response to the grievance on September 11, 2017, informing Burgess that

---

[5] Although HSA Moore's affidavit states Burgess submitted the grievance on January 1, 2017, it appears she inadvertently referenced the incorrect month as she notes a response to the grievance was provided to Burgess on September 11, 2017, and Burgess' copy of this grievance reflects he submitted it on September 1, 2017. *See* Doc. 19-1 at 7–8, Doc. 20-4.

the site medical director had received his medical records from the offsite medical appointment and that it was in the discretion of the site medical director to decide whether further tests were necessary after consultation with the offsite physician. Upon receiving a written response to his grievance, Burgess did not exhaust the facility's grievance procedure as he submitted no appeal from the response to his September 1, 2011, grievance.  Doc. 19-1 at 7–8.

The record establishes that Burgess had an administrative remedy available to him at Kilby during his confinement at the institution. Dr. Rahming's evidence further establishes Burgess failed to properly exhaust the remedy prior to filing this civil action. Specifically, despite the availability of a grievance procedure and his access thereto, Burgess failed to exhaust properly the facility's grievance procedure regarding the claims presented for relief.  Burgess therefore failed to properly exhaust an administrative remedy available to him during his incarceration at the Kilby Correctional Facility before seeking federal relief—a precondition to proceeding in this court on his claims. Burgess's unsupported and refuted allegations do not justify his failure to exhaust this administrative remedy prior to filing his complaint. The court, therefore, finds an institutional grievance system is available for Burgess's claims, but he failed to exhaust the administrative remedy available to him. The pleadings and records further establish that the institutional medical provider's administrative remedy remains available to Burgess and  dismissal without prejudice is, therefore, appropriate. *See Ngo*, 548 U.S. at 87-94; *Bryant*, 530 F.3d at 1374-1375 (dismissal for failure to exhaust an administrative remedy when the remedy remains available is not an adjudication of the merits and is without prejudice); *Woodford*, 548 U.S. at 87-94.

**IV.  CONCLUSION**

Accordingly, it is ORDERED and ADJUDGED that:

1.  Defendant's motion to dismiss (Doc. 15) is GRANTED to the extent Defendant seeks dismissal of the complaint due to Plaintiff's failure to properly exhaust an institutional administrative remedy prior to filing suit.

2.  This case is DISMISSED without prejudice under 42 U.S.C. § 1997e(a).

3.  No costs are taxed.

A separate final judgment will be entered.

Done this 26th day of May, 2020.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE